IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ROBERT LOUIS GLIDEWELL, | : | |
| | : | |
| Petitioner, | : | |
| | : | NO. 5:08-CV-394 (CAR) |
| VS. | : | |
| | : | |
| ANTHONY WASHINGTON, | : | |
| | : | Proceedings Under 28 U.S.C. §2254 |
| Respondent. | : | Before the U.S. Magistrate Judge |
| | : | |

### RECOMMENDATION TO DENY RELIEF

Before the Court is Robert Louis Glidewell's 28 U.S.C. §2254 petition seeking habeas corpus relief. Doc. 1. Because the grounds raised therein fail to state a claim or are procedurally defaulted, IT IS RECOMMENDED that the petition be DENIED.

### PROCEDURAL HISTORY

On August 4, 1998, Petitioner was indicted by the Jones County, Georgia Grand Jury for murder. A jury found Petitioner guilty of voluntary manslaughter on August 23, 1999. Petitioner received a sentence of twenty (20) years in confinement.

Following an unsuccessful motion for new trial, Petitioner filed a direct appeal. On April 27, 2006, The Georgia Court of Appeals affirmed Petitioner's conviction and sentence. Glidewell v. State, 630 S.E.2d 621 (2006), cert. den. No. S06C1490 (Ga., Sept.18, 2006). Petitioner then filed a petition for habeas corpus relief in the Superior Court of Johnson County, Georgia. Following an evidentiary hearing, the state habeas court denied relief. Petitioner then filed the instant 28 U.S.C. §2254 petition.

### STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering the instant petition, the facts as found by the Georgia Court of Appeals on direct appeal of Petitioner's criminal case are adopted by this court. These facts are as follows:

Viewed in a light most favorable to the jury's verdict, the evidence showed that in 1986, Glidewell and the victim were married and living in Hawaii with their son, Damien. The victim began having an affair with Dennis Kempf while Glidewell, who was serving in the military, was deployed to Korea. After Glidewell returned from Korea, the victim divorced Glidewell, and she and Damien moved in with Kempf for six or seven months. The victim, who was concerned about separating Damien from his father, subsequently decided to reconcile with Glidewell.

In 1990, Glidewell and the victim moved from Hawaii to Macon. A month later, Kempf moved from Hawaii to Tampa, Florida, and Kempf and the victim began spending weekends together. During a trip to visit Kempf in Tampa, she told Kempf that she had bought a house with Glidewell, but that it had been a mistake, and that she planned to ''do whatever she needed'' to sell the house so that she could move to Florida and marry Kempf.

On August 31, 1990, the last day the victim was seen alive, Kempf drove to Macon. He and the victim planned to meet that evening in a hotel and then drive to South Carolina in the morning. Kempf stopped in Valdosta on the way to Macon and called the victim at her office. She told Kempf that she was packed and ready to go. She intended to return home to wait for Glidewell to bring four-year-old Damien home. She and Damien would then go to the hotel.

When Kempf arrived at the hotel the victim was not there. He went to his room and contacted her by telephone shortly before 7:00 p.m. She told Kempf that she was still waiting for Glidewell to bring Damien home. After three hours the victim had not arrived at the hotel, and Kempf began calling the victim's home, but no one answered.

Early the next morning, Kempf drove to the victim's house. Her car was parked in the driveway. Kempf knocked on the front door but there was no answer. He then opened the victim's car door to pop the trunk, inside of which he found two or three of the victim's bags as well as Damien's suitcase and beach toys. Kempf called the police, who dispatched an officer to the location. After the officer arrived, he found a door to the house unlocked, and he and Kempf entered but found no one home. The victim's purse, which contained her credit cards and driver's license, was on the kitchen table.

When Glidewell subsequently arrived, he told the investigator that he and the victim had argued after he had returned home from Atlanta with Damien. According to Glidewell, the victim had jumped on his back, and he had flipped her over onto the floor and held her there until she became calm. He then left the house with Damien and went to Glidewell's parents' home. Investigators also interviewed Damien, who told them that Glidewell had ''got on mommy,'' and that ''I kicked daddy in the head.'' Glidewell was present at the interview and confirmed Damien's story, also telling Damien to ''remember daddy telling you to go back out and get in the truck, that I'd be there in a few minutes.''

Within months of the victim's disappearance, Glidewell boxed up the victim's clothes and put them in the attic and sold the victim's car, and when Glidewell's sister asked him if the victim might need those things when she came back, Glidewell responded that the victim would not be coming back. Glidewell remarried, and he told his new wife that the victim was not coming back because ''dead people don't come back.'' He also told her that ''you know what happened to [the victim] when she tried to leave me, and no woman is ever leaving me again.''

The victim's remains were found during February 1998 in Crawford County, approximately nine miles from Glidewell's parents' home, where Glidewell had gone to spend the night on August 31, 1990. The remains were also 2.2 miles from a house where Glidewell's family had once lived. Glidewell's sister testified that Glidewell was familiar with the area near the grave site because ''we learned to drive out there, so we were all over those roads.''

The victim's grave site contained jewelry consistent with the jewelry Glidewell had told an investigator that the victim was wearing on August 31, 1990, including an ''heirloom ring'' worn as a medallion and inscribed with the victim's ''Hawaiian'' name, Kalola. A few weeks after the body was discovered, the Crawford County sheriff asked Glidewell to come to the sheriff's office to look at the jewelry because at that time the sheriff was still trying to identify the body. Glidewell met with the sheriff in a conference room, looked at the jewelry, and told the sheriff that the jewelry was not the victim's. However, when Glidewell returned home he told his girlfriend that ''they found Carol,'' and he referred to the ring he bought the victim while they were in Hawaii.

After Glidewell was arrested he was placed in a cell with Richard Wilkinson. Wilkinson later testified that Glidewell admitted to killing the victim.

Glidewell, 630 S.E.2d 621 at 626-627.

NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C.

§ 2254(e)(2). After a review of the record in this case, and in light of the above fact statement, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of 28 U.S.C. § 2254(d), this court is prohibited from granting relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Williams v. Taylor, 529 U.S. 362, 402-13 (2000).

A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. Moreover, when a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

## DISCUSSION

### Ground One

In Ground One, Petitioner alleges that venue was improper in Jones County and contends that his conviction was therefore in violation of the Fifth, Sixth, and Fourteenth Amendments to the Unites States Constitution. Though Petitioner raised the issue of venue on direct appeal and in his

state habeas petition, the arguments were based solely upon state law grounds. Consequently, his claim is unexhausted and procedurally defaulted.

On direct appeal and in his state habeas proceedings, Petitioner contended that venue was not proper in Jones County, arguing that "the victim's body was discovered in Crawford County and the State presented no evidence, beyond a reasonable doubt, that the crime occurred in Jones County." Resp.'s Ex. 3, p. 4 (Doc. 13-3). The Court of Appeals found the argument to be without merit, finding that the evidence was sufficient to allow the jury to find that the victim died in Jones County and, in the alternative, that Georgia law authorized the jury to find that venue was proper in Jones County "because the evidence showed beyond a reasonable doubt that the crime 'might have been committed' in that county." Glidewell, 279 Ga. App. at 120-21 (citing O.C.G.A. § 17-2-2(h)). Petitioner did not argue in either proceeding that the venue violated his rights under the United States Constitution.

Because Petitioner failed to raise his federal due process claims in the state proceedings, those claims are unexhausted. A federal court may not consider an application for writ of habeas corpus on behalf of a person in state custody unless the petitioner has first exhausted his remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995). "A petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his state rights." Jiminez v. Fla. Dept. of Corrections, 481 F.3d 1337, 1342 (11th Cir. 2007). In the state proceedings, therefore, the petitioner must not only set out the facts to support his federal claim, but also "must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). The record in this case shows that Petitioner did not assert

federal constitutional issues related to venue in his direct appeal or in his state habeas petition, but raised only arguments of state law.

Petitioner's claim in Ground One is not only unexhausted, but is also procedurally defaulted. Were Petitioner to attempt to raise the issue in the context of a violation of federal law in a second state habeas corpus action, the state court would find it to be procedurally defaulted in accordance with Georgia's restriction on successive petitions, O.C.G.A. § 9-14-51, which provides that any grounds for relief not raised in the original or amended petition are deemed to be waived unless the court "finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." When the record makes it clear that an unexhausted claim would be barred by a procedural default under state law, courts may "treat those claims now barred by state law as no basis for federal habeas relief." Snowden, 135 F.3d at 736.

Where, as here, procedural default bars litigation of a constitutional claim in a state court, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice, Engle v. Isaac, 456 U.S. 107, 129 (1982), or a showing that a fundamental miscarriage of justice would occur if the federal court did not consider the claim. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Petitioner has failed to allege or establish cause and prejudice for this default. Likewise, there has been no showing that a fundamental miscarriage of justice would result if the claim is not addressed on its merits. Accordingly, Petitioner is not entitled to relief on the claim set forth in Ground One.

## Ground Two

In Ground Two, Petitioner alleges that the trial court's decision to allow the victim's skeletal remains to be shown to the jury violated his Constitutional right to due process. Petitioner raised a factually similar argument on direct appeal and in his state habeas petition. The state appellate court determined that the issue had been waived for purposes of appeal because Petitioner failed to object to the admission of this evidence at trial. The state habeas court agreed, noting that Petitioner

had not alleged any change in the facts or the law of the case to allow the claim to be relitigated in habeas corpus. Resp. Ex. 5, p. 8 (Doc. 13-7). Both state courts thus found the claim to be procedurally defaulted and precluded from review. Because Petitioner has made no showing of cause and prejudice or of the potential for a miscarriage of justice, further review of this procedurally defaulted claim is also precluded in this Court.

## Ground Three

In Ground Three, Petitioner alleges that his conviction violated his right to due process and equal protection because it occurred after the expiration of the four year statute of limitations applicable to the offense of voluntary manslaughter under Georgia law. Though Petitioner raised statute of limitations arguments on direct appeal and in his state habeas petition, he did so only on state law grounds and, as such, did not fairly present any Constitutional issues of due process or equal protection. Were Petitioner to attempt to raise these Constitutional arguments in a second state habeas corpus proceeding, it is clear that procedural default would preclude review. Thus, and due to the fact that no showing of cause and prejudice or of the potential for a miscarriage of justice has been made in the instant petition, further review of this claim is also precluded in this Court.

In addition to being procedurally defaulted, Petitioner's third claim also lacks merit. On Petitioner's direct appeal, Georgia's Court of Appeals held that the applicable statute of limitations under Georgia law was the statute for the offense charged in the indictment, murder, rather than for the lesser included offense of which he was convicted. Glidewell, 279 Ga. App. at 122. According to Georgia's laws,"the provisions of the statute of limitations applicable to an indictment for voluntary manslaughter will not bar a conviction of that offense under an indictment for murder; there being no statutory limitation as to indictments for murder." Id. (quoting State v. Jones, 274 Ga. 287, 289 (2001)). In the absence of any showing by Petitioner these state laws or their application by the state court was contrary to clearly established federal law or based upon an unreasonable determination of the facts in light of the evidence, the timing of Petitioner's

prosecution for and conviction of the lesser included offense of voluntary manslaughter does not create a claim for federal habeas corpus relief.

## Ground Four

In Ground Four, Petitioner alleges that the trial court violated his Fifth and Fourteenth Amendment rights when it allowed an expert witness to testify about: 1) an allegedly illegal scientific principle that had not been properly presented to the defense, and; 2) the credibility of a child witness. Though Petitioner raised factually similar arguments on direct appeal, he did not allege a violation of his federal Constitutional rights. Accordingly, the instant claims are new, procedurally defaulted, and precluded from review in this Court.

In addition, these claims also lack merit. Generally, federal courts in habeas corpus "are not empowered to correct erroneous evidence rulings of state trial courts." Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir.1984). To obtain habeas relief based on a state court's evidentiary ruling, a petitioner must show that the ruling rendered the proceeding "fundamentally unfair." Id. at 1544. "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) (quoting Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983)).

In Ground Four, Petitioner challenges the trial court's admission of expert testimony about a child witness' inability to remember events from eight years earlier. The child witness, Petitioner's son, was four years old at the time of the victim's death, but was twelve years old at the time of Petitioner's trial. The expert stated his opinion that the father's influence resulted in the child being unable to remember what took place eight years earlier. He also gave an opinion regarding "state dependent flashback syndrome," which he defined as "the notion that memories ... can be triggered by some aspect of that memory." Glidewell, 279 Ga. App. at 118 n. 1. The expert "used the principle to explain why [the child] became upset in two separate incidents when he saw his father on top of a woman in what [the child] should have realized was not a threatening situation." Id.

The state appellate court found that the admission of the expert's opinion was consistent with Georgia law. In its analysis of these issues, the court first noted that Petitioner failed to object or otherwise argue that the expert's testimony improperly bolstered the child's testimony. Consequently, the court concluded that the issue was waived for purposes of appeal. The court nevertheless went on to find that the trial court had properly conducted a hearing into the scientific basis of the principle of "state dependant memory" and had not abused its discretion in allowing the expert to testify. There has been no demonstration that the state appellate court's findings were unreasonable in light of the evidence or contrary to or the result an unreasonable application of clearly established federal law. Consequently, its decisions are entitled to deference.

Furthermore, even if the expert's testimony was improperly admitted, the evidence was not sufficiently material to impact the fundamental fairness of the proceedings. The expert's opinion was offered to explain the child's inability at trial to remember events that took place eight years earlier, when he was four years old. The trial court had previously admitted a recording of the child's statement to investigators at the time of the victim's disappearance, when the child stated during the interview of the Petitioner that "daddy got on mommy" and that the child "kicked daddy in the head." This statement itself was largely consistent with Petitioner's own statement that he had flipped the victim on the floor and held her down until she became calm. The expert's opinion about the child's subsequent inability to remember thus concerned a peripheral issue in the trial. The state's case was primarily based on other evidence, including statements by the Petitioner and corroborating circumstantial evidence. In view of Petitioner's failure to demonstrate that trial court's decision rendered the proceeding fundamentally unfair, in addition to the procedural default of the claim, Petitioner is not entitled to relief on Ground Four of his Petition.

## Ground Five

In Ground Five, Petitioner alleges that the State violated his Fourteenth Amendment rights when the prosecuting attorney argued facts not in evidence during closing arguments. The factual

basis for this argument was first raised by Petitioner on direct appeal in the context of an ineffective assistance of counsel claim. The state appellate court determined that the prosecutor's comments were founded upon reasonable inferences drawn from the evidence and concluded that counsel's failure to object was not ineffective.

Petitioner renewed this claim in his state habeas petition by arguing that the trial court erred by permitting the State to propose a cause of death – choking – during closing argument, although that cause of death was not supported by the evidence. The state habeas court found that Peitioner's argument had already been considered and decided by the appellate court during its analysis of Petitioner's ineffective assistance of counsel claim. In the absence of any showing that changes in the law or the facts of the case required the court to revisit the issue, the state habeas court denied relief.

Though the factual allegations offered in support of Ground Five were raised by Petitioner on direct appeal and in his state habeas petition, those facts were presented in support of a Sixth Amendment claim, as opposed to a Fourteenth Amendment claim. Consequently, Petitioner has not exhausted his Fourteenth Amendment claim, and were Petitioner to attempt to raise his present Fourteenth Amendment claim in a second state habeas corpus action, the state court would find it to be procedurally defaulted in accordance with O.C.G.A. § 9-14-51. Petitioner has not shown cause and prejudice or the potential for a miscarriage of justice. Accordingly, further review of this procedurally defaulted claim in this Court is also precluded.

## Ground Six

In Ground Six, Petitioner argues that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by charging the jury about the lesser included offense of voluntary manslaughter even though the indictment alleged only murder. Petitioner contends that the trial court "exceeded its power by allowing the jury to convict Petitioner of a charge [not] brought by a grand jury."

Petitioner's claim in Ground Six is procedurally defaulted. On direct appeal, Petitioner did not argue that the lesser included offense charge was a "constructive amendment" of the indictment,

but instead alleged that the trial court erred by instructing the jury on the offense of voluntary manslaughter because the evidence did not support the instruction. The state appellate court rejected the claim and found that there was pertinent evidence to support the trial court's instruction. The state habeas court also denied relief, noting that Petitioner had failed to allege any changes in the law or the facts of the case that would permit the issue to be relitigated.

Although Petitioner raised factual allegations regarding the voluntary manslaughter charge on appeal and in his state habeas action, he did not do so in the context of a federal due process claim of constructive amendment. Consequently, his claim in Ground Six is unexhausted, and were Petitioner to attempt to raise such a claim in a second state habeas corpus action, the state court would find it to be procedurally defaulted in accordance with O.C.G.A. § 9-14-51. In the absence of any present showing of cause and prejudice or of the potential for a miscarriage of justice, further review of this procedurally defaulted claim is precluded in this Court.

In any event, Petitioner's claim of constructive amendment is without merit. A jury may convict a criminal defendant of a lesser included offense if "the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989). See also United States v. Stone, 139 F.3d 822, 839 n. 15 (11th Cir. 1998). The Georgia Code defines voluntary manslaughter at O.C.G.A. § 16-5-2, which provides that

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

The elements of voluntary manslaughter are thus the same as the elements for murder, except that the jury is entitled to consider the mitigating circumstance of a "serious provocation" that excited the defendant's passion. To prove murder, the state has the burden to prove beyond a reasonable doubt that the killing was not mitigated by such provocation. See Davenport v. State, 283 Ga. 171, 172-73 (2008). In charging Petitioner with malice murder, the indictment was sufficient to place Petitioner on notice that he was charged with all the elements of voluntary manslaughter, and was therefore consistent with the requirements of due process.

Ground Seven

In Ground Seven, Petitioner alleges that the indictment was constitutionally insufficient because it did not describe the "manner and method" of the murder. Petitioner first raised this claim in his state habeas corpus petition. There, based on the fact that the issue had not been raised on direct appeal, the state habeas court determined that the claim was procedurally defaulted and, as such, was precluded from further review. In the absence of any showing of cause and prejudice or of the potential for a miscarriage of justice, further review of this procedurally defaulted claim is also precluded in this Court.

Ground Eight

In Ground Eight, Petitioner alleges that he received ineffective assistance of counsel because his trial counsel failed to object "to multiple attempts by the state to introduce damaging character evidence in the form of similar transactions in the absence of timely jury instructions." Petitioner's Br. 24 (Doc. 11). Petitioner contends that his counsel should have objected or requested a limiting instruction when the victim's lover was allowed to testify about an incident when Petitioner broke into the witness' home. Petitioner also contends his counsel should have objected or requested a limiting instruction when a witness testified about the existence of a restraining order.

Petitioner argued this issue on direct appeal, and the state appellate court determined that counsel's decision to wait until the close of evidence to request limiting instructions was not ineffective. Petitioner restated this argument in his state habeas action. Upon finding that the underlying issue had already been properly resolved on appeal, and in view of Petitioner's failure to allege any changes in the law or in the facts of the case, the state habeas court concluded that the issue could not be relitigated and, as such, provided no basis for relief.

The state appellate court reviewed Petitioner's claim of ineffective assistance on the merits and correctly found that Petitioner's counsel was not ineffective for failing to object to the admission of similar transaction evidence or to demand a contemporaneous trial instruction. The court

determined that the evidence was admissible under Georgia law and that the jury instruction given at the conclusion of trial was sufficient to limit the jury's consideration of similar transaction evidence. The court observed that evidence of prior difficulties between Petitioner and the victim was relevant and admissible to show the defendant's motive, intent, and bent of mind. It also observed that evidence about the restraining order was initially admitted over a hearsay objection by Petitioner's counsel and found no error in the admission of the testimony. Finally, the state appellate court held that Petitioner's trial counsel did not render ineffective assistance "solely because the request for a limiting instruction was not made until the close of evidence." Glidewell, 279 Ga.App. at 125 (citing Smith v. State, 270 Ga. 68, 70 (1998)). The state court's holdings reflect a reasonable finding of the facts based on the trial transcripts and are consistent with clearly established federal law. The record shows that trial counsel's conduct was within the "wide range of professionally competent assistance" recognized by Strickland v. Washington (466 U.S. at 690), and that Petitioner was not prejudiced by his counsel's decision not to object to evidence that was not inadmissible.

## Ground Nine

In Ground 9, Petitioner alleges that the trial court violated his Sixth Amendment right of confrontation when it permitted hearsay testimony. Specifically, Petitioner alleges that the trial court allowed hearsay testimony concerning the existence of a restraining order against Petitioner, concerning statements by the victim that she wanted leave Petitioner, and a statement that a "friend" had told a witness that Petitioner had threatened to burn her house down. On direct appeal, the state appellate court found that Petitioner's right to challenge the majority of these allegedly improper instances of hearsay on appeal had been waived because they were not objected to at trial. The court also concluded that the instances that had not been waived lacked merit because the testimony at issue did not rely on the veracity and competency of other persons and, as such, was not hearsay. Petitioner renewed these claims in his state habeas action. There, due to his failure to allege any

changes in the law or the facts of the case, the state habeas court determined that the claims could not be relitigated and, as such, did not provide a basis for relief.

Petitioner's claims regarding the admission of hearsay evidence are procedurally defaulted. Petitioner raised these claims on appeal and in his state habeas action in the context of state law evidentiary rules. He did not raise the claims under the Confrontation Clause. Consequently, his claims in Ground Nine are unexhausted, and were Petitioner to attempt to raise such claims in a second state habeas corpus action, the state court would find them to be procedurally defaulted in accordance with O.C.G.A. § 9-14-51. In the absence of any present showing of cause and prejudice or of the potential for a miscarriage of justice, further review of these procedurally defaulted claims is precluded in this Court.

## Ground Ten

In Ground 10, Petitioner alleges that O.C.G.A. § 17-2-2(h) is unconstitutional. Petitioner first raised this claim in his state habeas petition. There, based upon its observation that the claim had not been raised on direct appeal, the state habeas court determined that it was procedurally defaulted. Because Petitioner had failed to meet the cause and prejudice or miscarriage of justice exceptions to the procedural default rule, the state habeas court denied relief. Because Petitioner has likewise failed to establish cause and prejudice or to show a miscarriage of justice, further review of this procedurally defaulted claim is also precluded in this Court.

## Ground Eleven

In Ground 11, Petitioner alleges that the trial judge violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights by giving a jury instruction that was confusing and misleading. Though Petitioner raised this issue on direct appeal and in his state habeas petition, his arguments were based solely upon state law grounds. Consequently, this claim is unexhausted, and were Petitioner to attempt to raise the issue in the context of a violation of federal law in a second state habeas corpus action, the state court would find it to be procedurally defaulted in accordance with

O.C.G.A. § 9-14-51. In the absence of any present showing of cause and prejudice or of the potential for a miscarriage of justice, further review of this procedurally defaulted ground is also precluded in this Court.

## CONCLUSION

Because the Petitioner has failed to demonstrate that any claim adjudicated on the merits in the state court resulted in a decision that was: 1) unreasonable in light of the evidence; or 2) contrary to or the result an unreasonable application of clearly established federal law as determined by the United States Supreme Court, **IT IS RECOMMENDED** that his petition be **DENIED.**

Pursuant to the requirements of § 2254 Rule 11(b), it does not appear to that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, **IT IS FURTHER RECOMMENDED** that the Court deny a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 25th day of January, 2012.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge